IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE

Assigned on Briefs at Knoxville July 23, 2024

**ROBERT WAYNE GARNER v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Giles County**
**No. 16783    David L. Allen, Judge**

_____

**No. M2023-01337-CCA-R3-ECN**

_____

Petitioner, Robert Wayne Garner, filed a petition for writ of error coram nobis challenging his 2011 convictions for first degree felony murder, aggravated arson, and theft of property valued at $10,000 or more but less than $60,000. The coram nobis court held an initial hearing to determine whether Petitioner was entitled to a full evidentiary hearing; after the initial hearing, the coram nobis court dismissed the petition. Petitioner appeals, arguing the trial court erred in dismissing the petition without a full evidentiary hearing. After review, we affirm the judgment of the coram nobis court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

MATTHEW J. WILSON, J., delivered the opinion of the court, in which TIMOTHY L. EASTER and TOM GREENHOLTZ, JJ., joined.

Ryan W. Dugger, Columbia, Tennessee, for the appellant, Robert Wayne Garner.

Jonathan Skrmetti, Attorney General and Reporter; Abigail H. Rinard, Assistant Attorney General; Brent Cooper, District Attorney General; and Kyle Dodd, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

I. Background

A. Trial and Direct Appeal

In August 2011, a Giles County jury found Petitioner guilty of first degree felony murder, aggravated arson, and theft of property valued at $10,000 or more but less than

$60,000. The evidence presented at trial established that Petitioner, who was struggling financially, entered the home of his former landlord, assaulted her, bound her hands and feet, smothered her by placing plastic bags over her head, and set her house ablaze. *State v. Garner*, No. M2011-02581-CCA-R3-CD, 2013 WL 5461099, at *1 (Tenn. Crim. App. Sept. 30, 2013) (Not for Citation).[1] After the crimes, Petitioner suddenly "had unexplained money" that he used to pay outstanding bills, make rent payments, and pay for repairs to his daughter's car, among other things. *Id.* at *2. Petitioner also gave his wife money to pay her probation fees—which was five times her normal probation fee—and $4,800 to go shopping. *Id.* Furthermore, Petitioner gave his wife a "large two-carat solitaire ring and a diamond necklace;" the ring "had a unique flaw that made it positively identifiable as belonging to" the victim. *Id.* When Petitioner's wife asked about the source of his recent money, he replied, "you're better off if you don't know." *Id.* Based on this evidence, the jury found Petitioner guilty of the offenses referenced above, and the trial court sentenced Petitioner to an effective term of life imprisonment plus twenty-five years. *Id.* at *1. This court affirmed Petitioner's convictions on direct appeal. *Id.* at *8. The Tennessee Supreme Court denied Petitioner's application for permission to appeal on February 12, 2014.

## B. Collateral Challenges

Petitioner then began a string of unsuccessful collateral challenges to his convictions. In July 2015, more than a year after our supreme court denied him permission to appeal, Petitioner filed a petition for post-conviction relief. The post-conviction court held an evidentiary hearing before denying relief in February 2017. On appeal of his post-conviction petition, this court dismissed the appeal because the initial petition was not timely filed in the post-conviction court; we also concluded that had the petition been timely filed, Petitioner would not have been entitled to relief. *Garner v. State*, No. M2017-00417-CCA-R3-PC, 2018 WL 5840846, at *7-8 (Tenn. Crim. App. Nov. 7, 2018).

Petitioner filed a habeas corpus petition in 2019, alleging that his sentence was illegal because he was not eligible for parole. The habeas corpus court summarily dismissed the petition, and we affirmed. *Garner v. Perry, Warden*, No. M2019-001349-CCA-R3-HC, 2020 WL 4719310, at *3 (Tenn. Crim. App. Aug. 13, 2020), *perm. app. denied*, (Tenn. Dec. 2, 2020).

Petitioner then filed separate petitions seeking post-conviction fingerprint testing and a writ of error coram nobis. The trial court dismissed both filings. In a consolidated appeal this court concluded that the coram nobis petition was untimely, and neither filing

---

[1] An opinion designated "Not for Citation" by the Tennessee Supreme Court may be cited "when the opinion is relevant to a criminal, post-conviction or habeas corpus action involving the same defendant." Tenn. Sup. Ct. R. 4(E)(2).

entitled Petitioner to relief on the merits. *Garner v. State*, No. M2021-01396-CCA-R3-PC, 2023 WL 166832, at *3-5 (Tenn. Crim. App. Jan. 12, 2023), *perm. app. denied* (Tenn. Mar. 9, 2023). Finally, in September 2022, Petitioner filed a second petition for a writ of habeas corpus, alleging the felony murder indictment did not provide him with adequate notice of the charged offense. The habeas corpus court summarily dismissed the petition, and we affirmed this dismissal on appeal. *Garner v. Perry, Warden*, No. M2022-01733-CCA-R3-HC, 2023 WL 4693616, at *2-3 (Tenn. Crim. App. July 24, 2023), *perm. app. denied* (Tenn. Dec. 20, 2023).

## II. Current Coram Nobis Petition

On April 18, 2023, Petitioner filed a pro se[2] petition for writ of error coram nobis, claiming the existence of newly discovered evidence that established he did not commit the offenses for which he was convicted. Attached to the petition were three affidavits: an affidavit by Randall Shannon, a Tennessee Department of Correction ("TDOC") inmate convicted of sexual crimes against children (the Shannon affidavit); an affidavit by Petitioner (Petitioner's affidavit); and an affidavit by TDOC inmate Stephen Mayes (the Mayes affidavit).

Petitioner asserted in his petition that his "newly discovered evidence" was the August 1, 2022 Shannon affidavit, in which Shannon asserted that in 2018 he was incarcerated at the Northwest Correctional Complex in Tiptonville "housed in the same unit (pod) as Austin Burchelle." Shannon claimed he heard Burchelle admit to another unnamed inmate that Burchelle "had murdered a woman in Pulaski." According to the petition, Shannon died on October 30, 2022. The Shannon affidavit states, in relevant part:

> 5. I heard Mr. Burchelle admitting to another inmate that he had murdered a woman in Pulaski.
>
> 6. Mr. Burchelle stated that there were three other individuals involved with the murder but did not name the individuals.
>
> 7. Mr. Burchelle stated that the accomplices were a woman who was the driver of the vehicle and two other men.
>
> 8. Mr. Burchelle said that the reason for the murder and arson was to collect insurance money.

---

[2] Current appellate counsel appeared at the August 11, 2023 hearing detailed in this opinion. The coram nobis court appointed appellate counsel for this appeal on September 21, 2023.

9. Mr. Burchelle stated that they had bound the woman at the hands and feet and murdered her.

10. Mr. Burchelle stated that there was blood all in the trunk of the car where they had placed the body to transport the body back to the house.

11. Mr. Burchelle stated that they had taken the victim in her house and placed her body in the closet of her bedroom.

12. Mr. Burchelle repeatedly bragged that someone else was charged with the murder and that he had gotten away with it.

Neither the coram nobis petition nor the Shannon affidavit identifies the date on which this alleged conversation occurred or the name of the other inmate involved. The coram nobis petition claims that Burchelle was placed in Shannon's unit in February 2019.

Petitioner's affidavit states Mayes notified him that Shannon "would execute an affidavit setting forth the facts of the confession of Austin Burchell[e]," and that Petitioner had not spoken with Shannon. However, Petitioner's affidavit did not set forth the date on which Mayes spoke with Petitioner or Shannon.

The Mayes affidavit does not identify the circumstances under which Mayes learned about Shannon's information, the date Mayes learned about Shannon's information, or how Mayes told Petitioner about Shannon's information.

On May 8, 2023, the State filed a response to the coram nobis petition. The State declined to "argue that the petition at issue is time-barred by the statute of limitations." Rather, the State's argument focused on what it viewed as the inadmissibility of the Shannon affidavit under the Tennessee Rules of Evidence. The State asserted that the Shannon affidavit was hearsay within hearsay and that no exception under the Rules made the affidavit admissible. The State also argued that Shannon had no firsthand knowledge of the facts contained in the affidavit, and there was no proof that the "original declarant" was unavailable. The State concluded that because the Shannon affidavit was "inadmissible hearsay," Petitioner could not "carry his burden of proving that the purportedly 'newly discovered evidence' offered by the Petitioner 'may have resulted in a different judgment, had it been presented at the trial.'"

On August 11, 2023, the coram nobis court held a hearing to determine whether Petitioner would receive an evidentiary hearing. The parties' arguments at that hearing were consistent with their respective filings, and at the end of the hearing the coram nobis court took the issue under advisement. On August 30, 2023, the coram nobis court entered

an order dismissing the petition without an evidentiary hearing. The court found that the Shannon affidavit was inadmissible hearsay within hearsay that did not fall within any hearsay exception in the Rules of Evidence. The court also determined the affidavit was unreliable because Shannon had "no firsthand knowledge of any relevant fact relating to this matter" and the court had no way to assess the credibility of Shannon, a deceased convicted felon. The coram nobis court recounted the "overwhelming" circumstantial proof of Petitioner's guilt from Petitioner's trial and observed that the Shannon affidavit did not mention the victim by name and contained information that did not appear credible. Specifically, the court noted that Burchelle claimed to have killed the victim "to collect insurance money," but there was no proof Burchelle was a named beneficiary in the victim's insurance policy. Petitioner then filed a timely notice of appeal.

## III. Analysis

### A. Coram Nobis Relief Generally

The writ of error coram nobis is an "extraordinary procedural remedy . . . . into which few cases fall." *State v. Mixon*, 983 S.W.2d 661, 672 (Tenn. 1992). Generally, the decision whether to grant the writ rests within the sound discretion of the coram nobis court. *See State v. Hart*, 911 S.W.3d 371, 375 (Tenn. Crim. App. 1995). Accordingly, we review for abuse of discretion. *See State v. Workman*, 111 S.W.3d 10, 18 (Tenn. Crim. App. 2002).

To obtain coram nobis relief, a petitioner must show that the newly discovered evidence could not have been obtained before trial by either the petitioner or his counsel exercising reasonable diligence. *State v. Vasques*, 221 S.W.3d 514, 527-28 (Tenn. 2007). The Tennessee General Assembly has limited the relief available through the writ:

> The relief obtainable by this proceeding shall be obtained to errors [outside] the record and to matters that were not or could not have been litigated on the trial of the case, on a motion for new trial, on appeal in the nature of a writ of error, on writ of error, or in a habeas corpus proceeding. Upon a showing by the defendant that the defendant was without fault in failing to present certain evidence at the proper time, a writ of error coram nobis will lie for subsequently or newly discovered evidence relating to matters which were litigated at the trial if the judge determines that such evidence may have resulted in a different result, had it been presented at the trial.

Tenn. Code Ann. § 40-26-105(b). The Tennessee Supreme Court has stated that "as a general rule, newly discovered evidence which is merely cumulative or 'serves no other purpose than to contradict or impeach' does not warrant the issuance of a writ." *Wlodarz*

*v. State*, 361 S.W.3d 490, 499 (Tenn. 2012) *abrogated on other grounds by Frazier v. State*, 495 S.W.3d 246, 248 (Tenn. 2016) (quoting *Hart*, 911 S.W.2d at 375). "In considering a coram nobis petition, the trial court determines 'whether the new evidence may have led to a different result,' or in other words, 'whether a reasonable basis exists for concluding that had the evidence been presented at trial, the result of the proceedings might have been different.'" *Nunley v. State*, 552 S.W.3d 800, 816 (Tenn. 2018) (quoting *Vasques*, 221 S.W.3d at 527).

In the coram nobis petition, the petitioner must comply with these provisions:

> The . . . petition must be in writing and (1) must describe with particularity the nature and substance of the newly discovered evidence and (2) must demonstrate that this evidence qualifies as "newly discovered evidence." In order to be considered "newly discovered evidence," the proffered evidence must be (a) evidence of facts existing, but not yet ascertained, at the time of the original trial, (b) admissible, and (c) credible. In addition to describing the form and substance of the evidence and demonstrating that it qualifies as "newly discovered evidence," the [petitioner] must also demonstrate with particularity (3) why the newly discovered evidence could not have been discovered in a more timely manner with the exercise of reasonable diligence; and (4) how the newly discovered evidence, had it been admitted at trial, may have resulted in a different judgment.

*Payne v. State*, 493 S.W.3d 478, 485 (Tenn. 2016) (quoting *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010) (Koch, J., concurring in part and concurring in result), *overruled on other grounds by Nunley*, 552 S.W.3d 800).

A coram nobis petition "may be dismissed on the face of the petition, without discovery, an evidentiary hearing, or notification to the opposing party." *Clardy v. State*, ___ S.W.3d ____, No. M2012-00566-SC-R11-ECN, 2024 WL 3157350, at *6 (Tenn. June 25, 2024) (citing *Nunley*, 552 S.W.3d at 825-26). A coram nobis evidentiary hearing is required only when a hearing is "essential." *Id.* (citing *Nunley*, 552 S.W.3d at 826).

## B. Timeliness of Petition

A petition for writ of error coram nobis must be filed within one year of the judgment becoming final in the trial court. *Mixon*, 983 S.W.2d at 670. A judgment of conviction becomes final "thirty days after its entry in the trial court if no post-trial motions are filed or upon entry of an order disposing of a timely filed, post-trial motion." *Harris v. State*, 301 S.W.3d 141, 144 (Tenn. 2010). "[T]he statute of limitations . . . is not an affirmative defense that must be specifically raised by the State in error coram nobis cases;

- 6 -

instead, the . . . petition must show on its face that it is timely filed." *Nunley*, 552 S.W.3d at 828. Thus, even though the State declined to argue the statute of limitations below, we will consider it now. Here, Petitioner filed his 2023 coram nobis petition long after this court affirmed his convictions on direct appeal in 2013 and those convictions became final. Accordingly, the coram nobis petition is untimely.

"To accommodate due process concerns, the one-year statute of limitations may be tolled if a petition for a writ of error coram nobis seeks relief based upon new evidence of actual innocence discovered after expiration of the limitations period." *Nunley*, 552 S.W.3d at 828-29 (citations omitted). Our supreme court recently clarified the standard by which a court determines whether to toll the limitations period:

> if a petition for a writ of error coram nobis is not timely filed, and the petition seeks tolling of the one-year statute of limitations, the coram nobis court should first ascertain whether the petition cites new evidence discovered after expiration of the limitations period, and whether the coram nobis petition shows it was filed no more than one year after the petitioner discovered the new evidence. If so, the coram nobis court should assume *arguendo* the veracity of the new evidence cited in the coram nobis petition, for the purpose of assessing whether to toll the statute of limitations. To grant tolling, the coram nobis court must find that the new evidence would, if credited, clearly and convincingly show that the petitioner is actually innocent of the underlying crime, i.e., that the petitioner did not commit the crime. *Keen* [*v. State*], 398 S.W.3d [594,] 612 [(Tenn. 2012)]. If tolling is granted, the coram nobis court may then proceed to address the merits of the coram nobis petition, under the standards in the coram nobis statute, Tennessee Code Annotated section 40-26-105(b).

*Clardy*, 2024 WL 3157350, at *13 (alteration added).

Here, Petitioner has failed to establish that he filed his coram nobis petition within one year of learning about Burchelle's purported claim that he killed "a woman in Pulaski." Petitioner filed his petition within one year of Shannon's affidavit. However, the affidavits of Shannon, Petitioner, and Mayes do not state when Burchelle made his alleged statement or when Petitioner first learned about Shannon's willingness to complete an affidavit concerning Burchelle's statement. Furthermore, assuming *arguendo* that the information contained in the affidavit is true—that is, that Shannon overheard Burchelle admitting to killing a "woman in Pulaski," and that Burchelle did as he supposedly claimed—this evidence would not clearly and convincingly establish that Petitioner is actually innocent of the offenses in this case. According to the Shannon affidavit, Burchelle did not specifically state that he killed the victim in Petitioner's underlying case, and there was no

proof introduced at trial suggesting that the victim was killed to collect insurance money. Burchelle's claim that he killed a "woman in Pulaski" is weak evidence compared to the strong circumstantial proof of Petitioner's guilt put forth at trial. *See Garner*, 2013 WL 5461099, at *1-5. As stated above, our supreme court has held that "as a general rule, newly discovered evidence which is merely cumulative or 'serves no other purpose than to contradict or impeach' does not warrant the issuance of a writ." *Wlodarz*, 361 S.W.3d at 499 (quoting *Hart*, 911 S.W.2d at 375). Thus, we conclude that Petitioner's coram nobis petition was untimely and he was not entitled to due process-based tolling of the limitations period.

Even if Petitioner had been entitled to due process-based tolling of the limitations period, we agree with the coram nobis court that he still would not have been entitled to relief. *Clardy* provides that in deciding whether to toll the limitations period on due process grounds, the coram nobis court must "assume *arguendo* the veracity of the new evidence cited in the coram nobis petition[.]" 2024 WL 3157350, at *13. However, in considering the coram nobis petition on its merits, the court must determine whether the evidence contained therein is admissible and credible. We agree with the coram nobis court's conclusions that the evidence cited in the petition was inadmissible and there was no showing it was credible. Because Burchelle did not complete an affidavit and no other information was presented about him—apart from his being a convicted felon—the coram nobis court could not assess Burchelle's credibility or the veracity of his supposed claim that he killed "a woman in Pulaski." Perhaps more importantly, the Shannon affidavit was a hearsay statement not subject to any exception to the hearsay rules. "Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801. Shannon would be an "unavailable" witness at an evidentiary hearing because he is deceased. Tenn. R. Evid. 804(a)(4). However, the provisions of Rule 804(b), which allow for the admission of a statement by an unavailable witness, do not apply here because Shannon did not testify at a prior hearing, he did not give the statement under the belief of impending death, the statement is not against Shannon's interest, the statement does not concern his family history, and there is no "forfeiture by wrongdoing." *See generally,* Tenn. R. Evid. 804(b)(1)-(6). *See also Carter v. Quality Outdoor Prod., Inc.*, 303 S.W.3d 265, 268 (Tenn. 2010) (recognizing that hearsay evidence is admissible under Tenn. R. Evid. 804 only when both (1) the declarant is "unavailable"; and (2) the evidence "satisfies one of the exceptions to the hearsay rule for unavailable declarants provided in Rule 804(b)").

As with Burchelle, the coram nobis court had no way to assess Shannon's credibility or the veracity of the facts asserted in his affidavit because he is deceased. Perhaps most importantly, the substance of the affidavit reveals Shannon had no personal knowledge of the ultimate fact at issue in this case—whether Burchelle killed "a woman in Pulaski." An affidavit not based on personal knowledge "will not justify the granting of an evidentiary

hearing since the information contained in the affidavits, taken as true, would not entitle the petitioner to relief." *Hart*, 911 S.W.2d at 375.

Because the coram nobis petition was untimely, and because Petitioner failed to establish the evidence in the petition was admissible or credible, we conclude the coram nobis court did not abuse its discretion in dismissing the petition without a hearing. Petitioner is not entitled to relief.

### III. Conclusion

In consideration of the foregoing and the record as a whole, the judgment of the coram nobis court is affirmed.

_____
MATTHEW J. WILSON, JUDGE